## DAY v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. December 16, 1929.

No. 8616.

Harry B. Fleharty, of Omaha, Neb., for appellant.

Edson Smith, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., Ambrose C. Epperson and George A. Keyser, Asst. U. S. Attys., all of Omaha, Neb., and Philip M. Aitken, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

KENYON, Circuit Judge. Appellant was found guilty on each of eight counts of an indictment based on alleged violations of sections 3266, 3281, and 3282, Revised Statutes of the United States (26 USCA §§ 291, 306, 307).

The first three counts charge the unlawful making of mash and the fermenting of mash fit for production of spirits, and the unlawful using of a still for the purpose of distilling at 1609½ North Twenty-Fourth street, Omaha, Neb. The remaining counts charge similar violations of law at 1611½ North Twenty-Fourth street. The facts are not in dispute. Some federal prohibition agents in Omaha, having some knowledge and much suspicion that stills were being operated in the second story of a building at North Twenty-Fourth street, which second story was divided into four apartments numbered 1607½, 1609½, 1611½, and 1613½, secreted themselves about 9:30 o'clock one night at a place near the rear of the building where they could watch the rear entrance; there being a rear stairway leading up to the second floor. Others of the force were secreted near the gate to the Zusman feed and coal yard, a place not far from the suspected building, where they knew sugar was sold. Observing a Ford car entering the Zusman yard and go-

ing out again shortly, they followed it as it proceeded down the road a short distance to the rear of the building under suspicion of harboring operating stills. It went into the yard. The prohibition agents saw appellant loading a sack of sugar onto his back from the Ford truck. They found some empty bottles or jugs in the truck but no liquors. It is claimed by the government, and seems to be conceded by appellant, that the officers then arrested him, although there is little competent evidence to show just when an arrest was made, if at all. He was then taken up the stairs and into one of the apartments, where there was a still in operation, where he was searched and certain papers consisting of receipts for payment of rents of the apartments where the stills were being operated, for telephone, yeast, gas, sugar, etc., were taken from his person against his protest. These were subsequently admitted in evidence against him. The officers had no search warrant or warrant for appellant's arrest. The officers searched the different apartments and found in two of them stills, 56 barrels of mash, and some gallon jugs of moonshine whisky. In the other two apartments nothing was found. Appellant was sentenced to six months' imprisonment in jail on each of the counts, the same to run concurrently, and was fined $1,000.

■ There is one grave constitutional question presented, and the case stands or falls upon its determination, i. e., could the incriminating papers taken from appellant's person lawfully be used against him on the trial? They show that he was connected with the operation of this distillery, and if the prohibition officers had been able to restrain themselves until appellant had gone up the stairs with the sugar to where the stills were being operated, and arrested him while he was engaged in such operation, and then taken the papers from him, the courts would probably not have been troubled with this case. The theory of the government is that as the prohibition officers, approaching the building in following appellant's car, smelled a strong odor of mash coming from the building and one of them heard the roar of the gas burner under a still, they had probable cause to believe that a still was being unlawfully operated in the second story of the building and that appellant being in the yard loading a sack of sugar on his back was connected therewith, and therefore they had the right to arrest him for a felony being committed in their presence, and the search of his person was merely incidental to a lawful arrest.

■ It is, of course, well settled that a police officer may arrest without a warrant one believed by the officer upon reasonable cause to have been guilty of a felony or to be engaged in the commission of a felony. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790.

In Gerk v. United States, 33 F.(2d) 485, 486, this court adopts the rule stated in 5 C. J. 398, 399, as to when arrest can be made for a felony which is as follows: "It is not only the right, but the duty, of a peace officer to arrest, without warrant, one whom he finds attempting to commit, or one who is committing, or has committed, a felony in his presence, or within his view," and he "may arrest, without a warrant, one whom he has reasonable or probable grounds to suspect of having committed a felony."

■■ Probable or reasonable cause is a belief fairly arising out of facts and circumstances known to the officer that a party is engaged in the commission of a crime. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. If a person is legally arrested, he may be searched, and whatever is found on the person as the fruit or evidence of crime and tending to prove the offense may be seized and used as evidence against him. Sayers v. United States (C. C. A.) 2 F.(2d) 146; Billingsley et al. v. United States (C. C. A.) 16 F.(2d) 754; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409.

This case therefore simmers down to a single question, viz., was there a lawful arrest of appellant?

This court has many times held that where an officer of the law has direct personal knowledge from one or more of his five senses of sight, hearing, smell, touch, or taste that the suspected person is committing a crime in his presence, he may lawfully arrest him. See Garske v. United States (C. C. A.) 1 F.(2d) 620; Peru v. United States (C. C. A.) 4 F.(2d) 881; Brock v. United States (C. C. A.) 12 F.(2d) 370; Gerk v. United States (C. C. A.) 33 F.(2d) 485.

Granting that the prohibition officers were justified in believing from the smell of fermenting mash emanating from this building, and other circumstances, that a felony was being committed in the building, does it follow that they had sufficient probable cause to assume that a man in the yard with 400-pound sacks of sugar in a truck at 9:30 at

night, one of which he was attempting to load on his back, and with a few empty jugs in the truck, was participating in the felony? Mere suspicion is not sufficient, nor does it satisfy constitutional requirements that the evidence secured by the search of the person shows the party to be in fact guilty. Garske v. United States (C. C. A.) 1 F.(2d) 620. The Fourth and Fifth Amendments are intended to apply to the guilty as well as the innocent. It is well at times to advert to such language as the Supreme Court uses in Weeks v. United States, 232 U. S. 383, 391–392, 34 S. Ct. 341, 344, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177: "The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." The circumstance of appellant being in the yard and starting to unload sugar at 9:30 at night was undoubtedly an unusual and suspicious circumstance. He might have been unloading the sugar for a perfectly legitimate purpose, or have been a teamster with no knowledge that a still was being operated, or he might have been taking the sugar to the storeroom or other apartments. There were four apartments in the second story of this building. The first story was used as a storeroom. There were stills in only two of the apartments. It is conceivable, outside of the knowledge imparted by these papers taken from him, that appellant might have known nothing of the still and had no connection with it. It cannot be assumed that mere possession of sugar is any proof that it is to be used in an illicit still. It could hardly be assumed that a man driving a truck that had sugar upon it, and driving it within the sphere where officers smelled fermented mash, was engaging in the commission of a crime in the presence of the officer. Appellant was not found in any close connection with the operation of the stills. The mere transportation of the sugar was not a crime. There was no intoxicating liquor in his possession. It is not claimed he was participating in any conspiracy. The government cites a number of cases to sustain its position, some of which might appear to squint somewhat in favor of its theory, but none of them have any similarity of facts with the case at bar.

In Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231, a conspiracy was involved, and one of defendants actually engaged therein was in charge of premises where intoxicating liquors were being unlawfully sold. The place was a nuisance under the National Prohibition Act (27 USCA). It was held that a crime was being committed in the officer's presence, and that they had the right to search the defendant, Birdsall, and take from him evidence of the crime.

There is not one word of evidence here, outside of that objected to, to show appellant had any charge of the premises or was connected with them in any capacity.

In McBride v. United States (C. C. A.) 284 F. 416, the court held that when federal officers smelled fumes from a still in an unoccupied house, they were warranted in searching, and having found a still in illegal operation, in arresting those operating it.

In Colasurda v. United States (C. C. A.) 22 F.(2d) 934, it was held that where officers entering premises under search warrant found an uncompleted still and saw defendant arrive in an auto containing missing portions of still, officer had reasonable ground and probable cause for arrest.

In Schnorenberg v. United States (C. C. A.) 23 F.(2d) 38, the facts are so different from those in the case at bar as to make unnecessary any discussion thereof.

In Benton v. United States (C. C. A.) 28 F.(2d) 695, officers were informed by sense of hearing that intoxicating liquor was being transferred to other containers. It was held that arrest of defendant who was carrying a can containing five gallons of whisky from a woodshed to an auto was justified, as the officers saw the crime being committed.

In the Gerk Case, supra, there was evidence that prohibition officers detected the

odor of fermenting mash emanating from a shack and heard the roar of gasoline pressure in the building. They saw defendant enter the building, and it was held that was sufficient to show probable cause for believing there was a violation of Revised Statutes 3281 and 3282, and the search and arrest were upheld.

Judge Booth has discussed in a very late case, Raniele v. United States (C. C. A.) 34 F.(2d) 877 (opinion filed September 28, 1929), the question of assuming a crime was being committed in the presence of a prohibition agent, by virtue of his detecting the smell of fermenting mash coming from a residence. The case differs from this, it is true, because there was involved the question of a search of a home; but the principles he announces are somewhat in point here.

The officers' theory of the arrest is shown by the answer of prohibition agent, Anderson, to the suggestion of appellant that they had nothing on him, that they did not catch him with the outfit, as follows: "No, but we caught you pretty close to it and we will take a chance on locking you up." The nearest the officers get him to the crime is that he was "pretty close to it" because they thought he was going to carry the sack of sugar he was loading onto his back upstairs and there use it in connection with the still. Thoughts are not a substitute for evidence. It is carrying the doctrine of detecting crime by the process of smelling fermented mash entirely too far to conclude that every person within the range of the officer's olfactory nerves who may have something on his person or in an automobile under his control that might possibly be used in the unlawful making of intoxicating liquor is participating in a crime in the officer's presence. The evidence secured by a search of appellant's person after the arrest and claimed to be incidental thereto was secured in violation of the Fourth Amendment to the Constitution and used in violation of the Fifth Amendment. It is perfectly apparent from the record that without this evidence appellant could not have been convicted. The court practically so states in its instructions to the jury. As in our judgment the arrest was not lawful, there not being sufficient probable cause to warrant belief that appellant at the time was engaged in the commission of a crime, we reach the conclusion that the judgment of conviction must be set aside, the case reversed and remanded to the District Court for further proceedings in harmony with this opinion. It is so ordered.

Reversed and remanded.