Harold E. LAWSON, Appellant,

v.

UNITED STATES of America, Appellee.

James Wesley McMURRY, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 15917, 15918.

United States Court of Appeals
Eighth Circuit.

April 29, 1958.

Pat Malloy, Tulsa, Okl., for appellants.

O. J. Taylor, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

Appellants were informed against, tried and convicted of violating Section 1262, Title 18 U.S.C.A., which prohibits the transportation of intoxicating liquors into a state wherein the sale of intoxicating liquors is prohibited by law. They were charged with attempting to transport intoxicating liquors from the State of Missouri into the State of Oklahoma in which state the sale of intoxicating liquors without the requisite permits, with exceptions not here material, is prohibited by law. In the course of this opinion we shall refer to the appellants as defendants.

Upon their arraignment defendants entered pleas of not guilty. When the case was called for trial they interposed a motion to suppress certain evidence allegedly obtained from their possession by reason of an unlawful search and seizure. At the hearing of this motion it was stipulated that the court might hear the evidence on the motion and that if the motion were overruled the guilt or innocence of the defendants would be determined on the basis of the evidence so presented, a jury trial being specifically waived. After hearing all the evidence produced the court denied the motion to suppress and on the evidence so produced found the defendants guilty as charged and in due course entered judgments of conviction. On these appeals the sole issue presented is whether or not the court erred in denying defendants' motion to suppress the evidence secured by the alleged unlawful seizure of property in the possession of defendants. The property involved consisted of intoxicating liquor which was taken from the possession of defendants by government revenue offi-

cers while it was being transported by the defendants in an automobile on a public highway.

■ It is contended by defendants that rights guaranteed them by the Fourth Amendment to the Constitution were violated when revenue officers without a warrant seized and took from their possession certain intoxicating liquors being transported by them. If the search and seizure violated the Fourth Amendment then, manifestly, the motion to suppress interposed by defendants should have been sustained. This Fourth Amendment is in the nature of a guarantee of privacy and may be invoked by any citizen, whether innocent or guilty. As said by us in Kroska v. United States, 8 Cir., 51 F.2d 330, 332:

"An unjustified search and seizure violates the Fourth Amendment, whatever the character of the property seized, whether it was in the home, in an office, or in an automobile, and whether taken by force, by stealth or by fraud. The Fourth Amendment protects the citizen, whether innocent or guilty, against every unjustifiable intrusion by the government upon his privacy, and it has been said that these amendments confer, as against the government, 'the right to be let alone.' "

In Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 158, 75 L.Ed. 374, Mr. Justice Butler, speaking for the Supreme Court, said:

"The first clause of the Fourth Amendment declares: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' It is general and forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made and the papers taken."

■ The Fourth Amendment, however beneficent, does not forbid all searches and seizures but only such as are unreasonable. The propriety of the seizure of property without a search warrant is dependent upon the facts and circumstances existing at and prior to the time of seizure and known to the seizing officers. Seizure may be lawfully made from an automobile illegally transporting intoxicating liquors if the search is upon probable cause. Probable cause may be shown by facts and circumstances of such a character as to lead a reasonably discreet and prudent man to believe that liquor is illegally contained in the automobile to be searched and it is not necessary that the officer should have had before him legal evidence of the suspected illegal act. The question for determination is whether the seizing officers in this case had knowledge of facts and circumstances sufficient to warrant a reasonably discreet and prudent man to believe that the vehicle contained liquor subject to seizure. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 283, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Kroska v. United States, supra; Day v. United States, 8 Cir., 37 F.2d 80; United States v. McCall, 10 Cir., 243 F.2d 858. In Carroll v. United States, supra, in an opinion by Chief Justice Taft, it is among other things said:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens."

We must therefore consider what facts and circumstances were known to the seizing officers at the time of the search

and seizure in the instant case. These may be summarized as follows:

The seizure in question occurred near the town of Noel, Missouri, which is located about seven miles from the Oklahoma line. This town has a population of about fifteen hundred inhabitants and about a half mile south of the town there is a liquor store known in the record as the D-X Liquor Store. Defendants were residents of Tulsa, Oklahoma, where they both engaged in the liquor business. There were involved in the seizure the following named revenue officers: Wilcid Breault, Ralph Chance, Elwyn Gibson and Glenn Starrett. These officers had previously received information that the D-X Liquor Store had been selling intoxicating liquor to Oklahoma bootleggers.

At about 3:30 A.M. on the morning of July 20, 1957, Officer Breault took up a post of observation near the D-X Liquor Store about one hundred to one hundred fifty yards northwest of the store. He was equipped with binoculars and a radio transmitter by which he was in contact with the other officers in radio cars. At about 5:45 A.M. he saw a blue Ford automobile approach from the south on U. S. Highway 71 and saw it go into a garage attached to the liquor store. At about 6:50 A.M. he heard a car engine start, heard gravel moving in the area of the liquor store and saw the automobile appear again at the south end of the liquor store. It drove on to U. S. Highway 71 and turned south on that highway. By use of his radio transmitter he relayed this information to the other officers.

At the time of these occurrences Officers Chance and Gibson were nearby in a radio-equipped automobile. They were in radio contact with Officer Breault and received his radio communication that the car had left the D-X Liquor Store and was travelling in their direction. As these officers were travelling south on U. S. Highway 71 they observed the car, a 1957 blue, two-door Ford, behind them. This automobile turned off U. S. Highway 71 onto a gravel road going west. Officers Chance and Gibson turned around and pursued the Ford on the gravel road. The car appeared to be loaded. During the pursuit of the Ford the officers turned on their red light and siren whereupon the Ford accelerated its speed and thereafter both cars were travelling at the fastest rate of speed possible on the gravel road.

Officer Starrett was ahead of the Ford automobile on the gravel road as it proceeded west after leaving U. S. Highway 71. By means of the radio in his automobile he received information from other officers that the Ford was coming toward him. In response to this information he placed his car across the gravel road and turned on his red light. The Ford automobile stopped about twenty feet from his car. He recognized both defendants, having participated in their previous arrests. The defendant Lawson got out of his car, approached Officer Starrett and said to him, "Am I the only man hauling liquor around here?" Officers Chance and Gibson were immediately behind the Ford as it approached the roadblock. Officer Gibson testified that as soon as they drove up defendant Lawson got out of his car, spoke to Officer Starrett and made the remark quoted above. Officer Chance asked the driver his name and on learning that it was James McMurry of Tulsa, Oklahoma, knew that he was in the liquor business, since he had prior information about both defendants. Officer Chance observed from outside the car that packages were in the rear covered by a blanket but couldn't tell whether they contained whiskey. He searched the car and found it loaded with whiskey.

Officer Gibson had participated in an investigation of the defendant Lawson some six months prior to the investigation involved here and had stopped Lawson and the operator of the same D-X Liquor Store, in Arkansas, at which time they had had several cases of liquor in Lawson's car enroute to Tulsa, Oklahoma. On February 14, 1957, Officer Gibson had also participated, together with Officer Chance, in the stopping of a pick-up truck which was loaded with thirty cases

of liquor and which had just left the rear of the garage at this D-X Liquor Store.

Officer Starrett had participated in the arrest of defendant Lawson on January 21, 1957, and had been present in court at the time of Lawson's entry of a plea of guilty. He had also participated in the investigation on February 14, 1957, which resulted in the arrest of W. L. Lawson in the pick-up truck which contained thirty cases of liquor. In addition, he was familiar with the stopping of a 1954 Oldsmobile automobile on June 22, 1957, after it had been in the garage of the D-X Liquor Store, and that automobile was found to contain thirty-six cases of liquor. On June 24, 1957, Officer Starrett had pursued a 1950 Mercury automobile which had left the same D-X Liquor Store. The Mercury was closely followed by a Chrysler sedan driven by defendant Lawson. The pursuit took place on the same gravel road involved here and when he finally stopped the Mercury in Arkansas he found it contained intoxicating liquor. He also had information that during the six month period immediately preceding July, 1957, the D-X Liquor Store purchased quantities of intoxicating liquor totaling 4,371 cases.

It is observed that all of the officers who participated in the pursuit, the halting and the searching of the vehicle, knew that it had come from the D-X Liquor Store after having entered the attached garage at an early hour of the morning and after having been in the garage for almost an hour and they also knew that these defendants were bootleggers.

█ There were other attending circumstances tending to corroborate the admission implied in the statement of defendant Lawson, "Am I the only man hauling liquor around here?" We think the facts and attending circumstances known by the seizing officers and the inferences that might reasonably be drawn therefrom were such as not only to warrant but to impel a reasonably discreet and prudent man to believe that intoxicating liquors were being illegally trans-

ported in the automobile to be searched. The search and seizure were therefore not violative of the Fourth Amendment because they were not unreasonable and the judgments appealed from are therefore affirmed.