**UNITED STATES of America**

v.

**CURRENCY IN THE TOTAL AMOUNT OF $2,223.40, consisting of Moneys of the United States of America, bills and coins, in the sum of $2,220.40 and $3.00 in moneys of the Dominion of Canada.**

**Civ. A. No. 6648.**

United States District Court
N. D. New York.

Nov. 26, 1957.

 

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., Andrew J. Culick, Asst. U. S. Atty., Amsterdam, N. Y., of counsel, for the U. S.

Anthony F. Caffrey, Syracuse, N. Y., for claimant, David Armour McCarthy.

BRENNAN, Chief Judge.

This is a civil proceeding which seeks to enforce the forfeiture to the United States of the currency described in this title. The proceeding is based upon the provisions of the Internal Revenue Code (26 U.S.C.A. § 7302) in that said currency was intended for use in violating the provisions of the Internal Revenue Laws or which had been so used.

The libel charges generally that the alleged offending currency was intended to be used in violation of the Internal Revenue Laws by one, David Armour McCarthy, who was engaged in the business of accepting wagers at Syracuse, N. Y., from July 1, 1956, to November 10, 1956 and who wilfully failed to pay the special tax imposed under Sections 4401(a) and 4411 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 4401(a), 4411, to the District Director of Internal Revenue at Syracuse, N. Y. See also Title 26 U.S. C.A. 4901.

No question is raised as to the preliminary proceedings taken herein. Claimant McCarthy filed an answer to the libel which admits the seizure of the moneys in dispute from his personal possession, custody and control. He alleges that same was and is his property. That said moneys were intended to be used or had been used in violating the provisions of the Internal Revenue Law is put in issue by the denial in the answer. A hearing was held before the court. Documentary and oral evidence was offered by the United States. The claimant offered no evidence. Motions to dismiss the libel were made and decision thereon reversed. The parties have submitted their briefs and the problem is before the court for determination.

## Findings of Fact

On March 18, 1957, claimant McCarthy entered a plea of guilty in this court to certain counts of an indictment. Count III is pertinent here and is set out below:

"That on or about July 1, 1956, at Syracuse, State and Northern District of New York, David Armour McCarthy, the defendant herein, who did engage in the business of accepting wagers at and near Syracuse, New York, from on or about July 1, 1956, to on or about November 10, 1956, did unlawfully, knowingly and wilfully fail to pay the special tax imposed under Section 4411 of the Internal Revenue Code of 1954, to the District Director of Internal Revenue for the Syracuse Internal Revenue Collection District of New York, at Syracuse, New York. (Sections 4411 and 7203 of the Internal Revenue Code of 1954 [26 U.S.C.A. §§ 4411, 7203])."

The undisputed oral evidence discloses that one, Mascari, a special agent of the Internal Revenue Service, entered or visited the premises known as the Auditorium Cigar Store at Syracuse, New York, on eight different dates, between October 29, 1956 and November 7, 1956, inclusive. On each occasion, he placed a bet or wager on the result of certain horse races, using a betting slip on which the names of the horses were written and the amount of the wagers noted thereon. Transactions were had with claimant McCarthy and with persons named Beck and Murray. The findings here will relate only to the transactions with McCarthy, the claimant, because of the particular facts of this case and because he is the individual claimant of the moneys involved.

After visiting the cigar store on October 29, 1956 and October 30, 1956, when Mascari made wagers with Beck, he again entered the store on October 31, 1956; sat at a table in the rear room and claimant McCarthy paid Mascari $3.80, the proceeds of a wager made with Beck on October 30, 1956. The agent then wrote out a betting slip with the names of two horses thereon indicating a bet of $6. The slip was handed to McCarthy, the claimant, and the $6 paid to him. On November 1, 1956, the agent again entered the store; went into the back room; prepared a betting slip showing a $6 combination bet. McCarthy paid Mascari $7.20, due on the wager made the day before, and the $6 betting slip and the $6 in cash were placed with McCarthy. On November 3, 1956, the agent followed a similar procedure of entry and claimant McCarthy paid to him the sum of $21.50 which represented the agent's winnings on a wager placed with Beck on November 2, 1956. The agent then prepared a betting slip; handed same to McCarthy, together with the sum of $6 representing the amount wagered. On November 6, 1956, on the occasion of the agent's visit to the above premises, he was handed $6 by McCarthy which represented a wager made on November 3, 1956, with one Murray. The agent then prepared a betting slip; same was handed to McCarthy, together with the sum of $6 representing the amount wagered.

On November 10, 1956, several Internal Revenue agents, acting under the authority of a search warrant, entered the premises of the Auditorium Cigar Store and arrested claimant McCarthy. Within a couple of hours, he was taken to the Internal Revenue office and was directed or requested to empty his pockets. In response, three separate bundles or rolls of money were placed on the desk by McCarthy. Same was counted and found to consist of the currency described in the caption of this proceeding. Among the bills produced by McCarthy, as above described, were three $1 bills bearing the same serial numbers of bills used by the agent in making the bets, above referred to, he having kept a record of the serial numbers of all new money used in placing the bets but no record was kept of the serial numbers of the bills received by the agent in the

payment of his winnings which were then used to make up the moneys wagered on the particular day such payments were made.

## Discussion

■ It is beyond argument that a forfeiture proceeding, such as we have here, is civil in its nature although in some proceedings, brought under particular statutes, it is said to possess some of the attributes of a criminal case. United States v. One 1953 Oldsmobile Sedan, D.C., 132 F.Supp. 14, at page 18; United States v. One 1948 Cadillac Convertible Coupe, D.C., 115 F.Supp. 723, at page 728.

■■ The burden of proof is upon the Government to show the existence of the elements necessary to warrant a decree of forfeiture as authorized by the statute and particularly those elements as alleged in the libel. This principle is based upon the oft cited case of United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494. See also United States v. Plymouth Coupe, D.C., 88 F. Supp. 93, at page 96; United States v. 673 Cases of Distilled Spirits and Wines, D.C., 74 F.Supp. 622, at page 626 and cases cited. In this particular case, the facts as to violation of the law by the claimant and his possession of the currency in question, not being in dispute, the principal burden of the Government is to establish that same was intended for use in violating the provisions of the Internal Revenue Laws. 26 U.S.C.A. § 7302. The measure of the burden thus imposed is satisfied by proof which establishes the fact by a "reasonable preponderance of the evidence". United States v. 673 Cases of Distilled Spirits and Wines, supra, 74 F.Supp. at page 626.

■ It is intimated, although not seriously urged, that the currency involved here is not subject to forfeiture under the provisions of the statute. There is no basis for such a contention. The words "any property" as used in Title 26 U.S.C.A. § 7302 are all inclusive. Currency has been held to be property subject to forfeiture proceedings under other forfeiture statutes which embody the words in a similar context as they are used in the statute under discussion. To warrant a decree of forfeiture, however, the currency must be shown to bear a relationship to the offense against the revenue laws. United States v. Foreman, 5 Cir., 95 F.2d 479; United States v. Jenello, 3 Cir., 102 F.2d 587; United States v. One Machine, etc., D.C., 267 F. 501. It seems to be true that the majority of the reported cases, dealing with forfeiture proceedings, relate to conveyances and equipment rather than to currency. The so-called wagering statute however is comparatively new and few decisions are found which are helpful in this particular case. It seems plain that the particular statutes of the Internal Revenue Code, dealing with the rights and liabilities of those engaged in wagering, must be construed in the light of their purpose.

While currency and the use thereof may appear to be a remote accessory to the illegal manufacture, possession or transportation of spirits and narcotics, it would be naive to conclude that the same remoteness exists in the business of accepting wagers.

It is deemed advisable at this point to refer to the documentary evidence offered in this proceeding. The Government offered certain affidavits and the decision of Judge Foley in a proceeding brought by McCarthy before indictment to obtain the return of the money here involved. These documents were received without objection but no significance or weight is attached to the contents thereof, there being some doubt in my mind as to their admissibility.

■ The judgment of conviction of the claimant McCarthy, referred to above, has been judicially noticed in the decision of this controversy. No objection to the action of the court is raised but there seems to be no doubt as to the power of the court to take judicial notice of its own records in the same or in an interrelated case. Freshman v. Atkins, 269 U.S. 121, at page 124, 46 S.

Ct. 41, at page 42, 70 L.Ed. 193; Fletcher v. Norfolk Newspapers, 4 Cir., 239 F.2d 169; Hatch v. Morosco Holding Co., D.C., 56 F.2d 640, affirmed 2 Cir., 61 F.2d 944. There is no doubt that conviction or acquittal of the criminal offense would not bar or require the forfeiture. U. S. v. Harvin, D.C., 91 F.Supp. 249, at page 250. The criminal case involves the personal guilt of the person charged, while a forfeiture proceeding is one in rem against the offending article. The effect of McCarthy's plea is not to bind the offending currency as to the use for which it was intended. It has, however, the effect of an admission of all averments of fact. United States v. 162–10/12 Cases, etc., D.C., 138 F.Supp. 820; Berg v. United States, 9 Cir., 176 F.2d 122, at page 125. It does establish that during the time in question the claimant had not paid the special tax required and thereby any property used in the illegal operation became subject to the provisions of the forfeiture statute. Payment of the tax is required prior to engaging in the business. United States v. Five (5) Coin-Operated Gaming Devices, D.C., 154 F.Supp. 731, at page 734,

A consideration, of whether or not the Government has established the necessary relationship between the alleged offending currency to warrant forfeiture must be resolved by a consideration of the evidence offered.

As indicated in the evidence here, the transactions with the claimant at the Auditorium Cigar Store were on a cash basis. Wagers were made in cash and payments were made to the winners in like manner. A sufficient amount of cash to meet the demands of the trade appears to have been a necessary and closely related implement or facility of the wagering business as transacted here. United States v. Ryan, 284 U.S. 167, at page 176, 52 S.Ct. 65, at page 68, 76 L.Ed. 224.

▮ The litigants here agree that the currency was taken from the possession of McCarthy. Intent to use same in the wagering business is a necessary element to be proven. Intent is rarely proved by direct evidence but we can start here with the undisputed fact that at least three of the bills, constituting the currency seized, were actually used in the commission of the offense. This type of evidence possesses high probative value. United States v. Windle, 8 Cir., 158 F.2d 196. The claimant did not take the stand to explain his possession of the moneys in question or to shed light on the use for which they were intended. Unquestionably this fact is a circumstance against him and is entitled to be considered either as a presumption that his evidence would be unfavorable (United States v. Roberson, 5 Cir., 233 F.2d 517, at page 519) or to affect the weight to be given to the evidence already offered. See New York decisions Laffin v. Ryan, 4 A.D.2d 21, 162 N.Y.S. 2d 730 and cases cited. United States v. Roberson, supra, is relied upon by the claimant but an examination of the footnotes at page 518 of 233 F.2d shows that the evidence offered in that case was not nearly as strong as that offered here where without doubt a prima facie case is proven.

▮ Forfeitures are not favored. Nevertheless revenue statutes are construed and applied less narrowly than penal statutes. United States v. Ryan, supra, 284 U.S. 172, 52 S.Ct. 67. A consideration of all the evidence, especially the nature of the business conducted by the claimant, his method of operation, his possession of the offending items, the prior use of three bills in the illegal business, the necessity for cash capital in the conduct thereof, and the absence of any explanation by the claimant, leads to the additional findings that claimant McCarthy was liable for and had not paid the special tax required under the provisions of Section 4111; that he was engaged in the acceptance of wagers, at least from October 31, 1956 until November 6, 1956 and that the currency here involved was intended to be used by him in violating the provisions of the Internal Revenue Law.

It is concluded that the libellant, the United States of America, is entitled to a decree of forfeiture in accordance with the prayer of the libel, and it is

So ordered.